AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
## for the
Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>In the Matter of the Search of information associated with<br>██████████████, etc. that is stored at premises<br>controlled by Google LLC | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.  **1:23-MJ-00018**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC 875(d) | Interstate extortion |

The application is based on these facts:

See attached affidavit

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Ryan Potter, FBI
*Printed name and title*

Sworn to before me and signed in my presence by FaceTime Video Conference.

Date: **Jan 10, 2023**
_____

City and state: Cincinnati, Ohio
_____
*Judge's signature*

Stephanie K. Bowman, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
GOOGLE ACCOUNT(s):



THAT IS STORED AT THE PREMISES
CONTROLLED BY GOOGLE LLC

Case No. **1:23-MJ-00018**

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Ryan Potter, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application for a search warrant for

information associated with certain accounts that are stored at premises owned, maintained,

controlled, or operated by Google LLC ("Google"), an electronic communications service and/or

remote computing service provider headquartered at 1600 Amphitheatre Parkway, Mountain

View, California 94043.  The information to be searched is described in the following paragraphs

and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. I am a Special Agent with the Federal Bureau of Investigation and have been since June of 2021. I am currently assigned to the Cincinnati Division. Prior to my current position I served eight years in the United States Air Force as an intelligence analyst. During that time, I utilized all-source intelligence collection, to include digital network intelligence, to research digital networks and locate high valued individuals. While employed by the Federal Bureau of Investigation, I have investigated federal criminal violations related to high technology or cybercrime, computer intrusions, wire fraud, and others. I have gained experience through training at the Federal Bureau of Investigation and daily efforts relating to conducting these types of investigations. As a Federal Agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

3. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 875(d) have been committed by unknown persons. There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband, and/or fruits of these crimes further described in Attachment B.

2

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      In December 2021, a company which provides wireless industrial hardware sensors to clients in the Cincinnati, Ohio area (hereafter Company-1), contacted the FBI to report a former contractor who threatened to release Company-1's proprietary data unless he was paid $5,000 USD. I have spoken with employees from Company-1 regarding this incident, and those employees provided the following information:

      a.    In November 2021, Company-1 hired an outside contractor through the Upwork[1] platform to write computer code for Company-1. Prior to beginning work, Company-1 provided the contractor, who went by the name ███████ (hereafter ██████ with a sample of Company-1's proprietary computer code for ██████ to reference while working on Company-1's code writing project. Company-1 estimated the value of this code to be between $2 million USD and $3 million USD.

      b.    During the course of ██████ contract with Company-1, ██████ did not provide any completed work products and did not demonstrate any evidence of working

---

[1] Upwork is an online platform that allows organizations to hire freelance contractors to complete projects or assignments.

on the agreed upon code project. This prompted Company-1 to terminate its contract with ████.

c. During the course of ████ engagement with Company-1, ████ Upwork account was cancelled due to a failed identity verification. In light of this, ████ requested Company-1 pay ████ via Paypal or Payoneer. ████ had requested payment via Paypal using the email address ██████████████, or via Payoneer using the email address ██████████████.

d. When Company-1 entered into a contract with ██████████ provided Company-1 with two completed IRS form W-9s. Company-1 was unable to verify the identification information on either form submitted by ████ and determined the forms were submitted with fraudulent social security numbers and addresses.

e. On or about November 25, 2021, ████ emailed Company-1 threatening to leak Company-1's proprietary code on GitHub[2] unless Company-1 paid ████ $5,000 USD. ████ sent this email using the account ██████████████.

f. In December of 2021, ████ published pieces of Company-1's proprietary code to GitHub. The GitHub repository ████ posted the code to appeared to be named specifically for Company-1 and had been created prior to any disputes between ████ and Company-1.

g. During communications with ██████████ stated "This is not a game, there was similar case with previous client before, and they disagreed on what we suggested like I did to you – The result was too terrible…"

---

[2] GitHub is an online code repository used by developers to share and collaborate on source code.

7.    In March 2022, the FBI obtained records from Paypal Inc. regarding the account associated with ███████████. These records identified the account holder as ████████. The account listed ████████████████ and ████████████████ as additional email addresses. ████████████████ was referenced as the email address used for accessing the Paypal account. The records revealed payments to two other Paypal Accounts. The email addresses associated with those Paypal accounts are ████████████████ and ████████████████.

8.    In March 2022, the FBI obtained records from Payoneer Inc. regarding the Payoneer account associated with ████████████████. The records identified ████████ ████████ as the account holder. The records revealed multiple payments dating back to July 18, 2019 associated with Upwork activity and activity pertaining to guru.com, another freelancing website. The records also revealed payments received from numerous other US-based companies. I have spoken with an employee of one of these companies (Company-2) regarding these payments and the employee provided the following information:

    a.  In June 2021, Company-2 hired a programmer to assist the company with a project. Between June 2021 and January 2022, Company-2 paid the programmer, who went by the name ████████ (hereafter ████), approximately $20,000 USD

    b.  In January 2022, Company-2 began questioning ████ regarding the lack of progress on ████' work. Following several conversations, Company-2 decided to cut ties with ████, at which time ████ began threating Company-2.

    c.  On February 8, 2022, ████ sent a message stating "I cannot guarantee the safety of any source code and all documentation, and I can not hesitate to do negative things."

9.    In September 2022, the FBI received the results of a search warrant served to Google for ███████████████, ███████████████, ███████████████, ███████████████, ███████████████, ███████████████, ███████████████, and ███████████████. The following information was gained from the results:

    a.    ███████████████ received forwarded email communications from ███████████████. The email communications forwarded to ███████████████ were between ███████████████ and ███████████████. The email communications contained personally identifiable information (PII) for four individuals. The emails confirmed the PII was used to create four fraudulent Paypal accounts and contained a guide which explained how to avoid having the newly created accounts suspended by Paypal. The email addresses associated with the fraudulent Paypal accounts were ███████████████, ███████████████, ███████████████, and ███████████████. The Paypal account associated with ███████████████ was the same account which transacted with the Paypal account associated with ███████████████.

    b.    ███████████████, as well as email addresses ███████████████, ███████████████, and ███████████████, contained email communications with numerous other email accounts whose users were programmers located within the United States (US). These communications outlined a plan to utilize the computers of these US-based programmers to open Upwork accounts. The Upwork accounts would be opened from these computers

in order for them to appear US-based, thus avoiding the financial penalties incurred on non-US-based accounts. The communications stated that access to the US-based computers would be completed using AnyDesk[3], or similar applications, and that the US-based programmers would simply have to keep the computer on at all times and participate in a single video authentication interview conducted by Upwork. The purpose of the video authentication interview is to confirm the user of the Upwork account is indeed who they say they are.

c.  ████████████████, as well as email addresses ████████████████, ████████████████, and ████████████████, contained email communications with numerous email addresses whose users were English speaking programmers. Within the communications, attempts were made to recruit the English-speaking programmers to adopt fictional personas and participate in interviews with companies. The English-speaking programmers were instructed to avoid using cameras during the interviews.

d.  The Google drive of ████████████████ contained video recordings of the previously described interviews. In one such video, it is revealed that the individual participating in the interview, who adopted a fictional persona, was logged into email address ████████████████. This email address did not match the name of the fictitious persona they were using. Throughout all video recordings created by this individual, the email account ████████████████ was

---

[3] AnyDesk is a remote desktop software which allows users to access and control a computer from remote locations.

active. The video recordings also revealed a Discord[4] chat used by the individual participating in the interviews to communicate with two other Discord users about what to say during the interviews. The Discord username of the individual participating in the interviews was " ███████████." An email address of ███████████████████████ communicated with email address ███████████████ regarding the need for the user of email address ███████████████████████ to fill out available time slots and return the information to ███████████████.

e.  The Google drive of ███████████████ contained template copies of the messages used to recruit people into the scheme. The email address listed on one of the recruitment messages was ███████████████████.

f.  The recovery email address for ███████████████████ was listed as ███████████████████.

g.  ███████████████ was the recovery email listed for at least 75 other email address. The recovery email for ███████████████████ was ███████████████.

h.  The recovery email address for ███████████████████ was listed as ███████████████.

---

[4] Discord is a platform for hosting real-time text, video and voice chats.



i. ███████████ is the recovery email address for email address ███████████. ███████████ is also linked to email address ███████████ by cookie[5].

j. In December 2022, the FBI obtained records from Paypal regarding the accounts associated with ███████████, ███████████, ███████████, ███████████, ███████████ and ███████████. These records revealed additional email addresses associated with these fraudulently created Paypal accounts. Those email addresses were ███████████, ███████████, ███████████ **and** ███████████.

## **BACKGROUND CONCERNING GOOGLE[6]**

10. Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site

---

[5] Cookies are pieces of text that a website sends to a browser that help the website remember information about the user of the browser's visit to the website, such as user preferences and settings. Because cookies are stored on a browser, multiple accounts being linked by shared cookies is indicative of those accounts being accessed using the same browser. Based on my training and experience, if two accounts are accessed by the same browser, there is reason to believe that the individual using that browser is also the user of both accounts accessed by the browser.

[6] The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages: the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

11.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

12.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

13.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

14.     Google integrates its various services to make it easier for Google Accounts to access the full Google suite of services. For example, users accessing their Google Account through their browser can toggle between Google Services via a toolbar displayed on the top of most Google service pages, including Gmail and Drive. Google Hangout, Meet, and Chat conversations pop up within the same browser window as Gmail. Attachments in Gmail are displayed with a button that allows the user to save the attachment directly to Google Drive. If someone shares a document with a Google Account user in Google Docs, the contact

10

information for that individual will be saved in the user's Google Contacts. Google Voice

voicemail transcripts and missed call notifications can be sent to a user's Gmail account. And if a

user logs into their Google Account on the Chrome browser, their subsequent Chrome browser

and Google Search activity is associated with that Google Account, depending on user settings.

15.     When individuals register with Google for a Google Account, Google asks users

to provide certain personal identifying information, including the user's full name, telephone

number, birthday, and gender. If a user is paying for services, the user must also provide a

physical address and means and source of payment.

16.     Google typically retains and can provide certain transactional information about

the creation and use of each account on its system. Google captures the date on which the

account was created, the length of service, log-in times and durations, the types of services

utilized by the Google Account, the status of the account (including whether the account is

inactive or closed), the methods used to connect to the account (such as logging into the account

via Google's website or using a mobile application), details about the devices used to access the

account, and other log files that reflect usage of the account. In addition, Google keeps records of

the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of

service, as well as the IP addresses associated with particular logins to the account. Because

every device that connects to the Internet must use an IP address, IP address information can

help to identify which computers or other devices were used to access the Google Account.

17.     Google maintains the communications, files, and associated records for each

service used by a Google Account on servers under its control. Even after a user deletes a

communication or file from their Google Account, it may continue to be available on Google's

servers for a certain period of time.

11

18.     Google provides email services (called Gmail) to Google Accounts through email addresses at gmail.com or enterprise email addresses hosted by Google. Gmail can be accessed through a web browser or a mobile application. Additional email addresses ("recovery," "secondary," "forwarding," or "alternate" email addresses) can be associated with the Google Account by the user. Google preserves emails associated with a Google Account indefinitely, unless the user deletes them.

19.     Google provides an address book for Google Accounts through Google Contacts. Google Contacts stores contacts the user affirmatively adds to the address book, as well as contacts the user has interacted with in Google products. Google Contacts can store up to 25,000 contacts. Users can send messages to more than one contact at a time by manually creating a group within Google Contacts or communicate with an email distribution list called a Google Group. Users have the option to sync their Android mobile phone or device address book with their account so it is stored in Google Contacts. Google preserves contacts indefinitely, unless the user deletes them. Contacts can be accessed from the same browser window as other Google products like Gmail and Calendar.

20.     Google provides an appointment book for Google Accounts through Google Calendar, which can be accessed through a browser or mobile application. Users can create events or RSVP to events created by others in Google Calendar. Google Calendar can be set to generate reminder emails or alarms about events or tasks, repeat events at specified intervals, track RSVPs, and auto-schedule appointments to complete periodic goals (like running three times a week). A single Google Account can set up multiple calendars. An entire calendar can be shared with other Google Accounts by the user or made public so anyone can access it. Users have the option to sync their mobile phone or device calendar so it is stored in Google Calendar.

12

Google preserves appointments indefinitely, unless the user deletes them. Calendar can be accessed from the same browser window as other Google products like Gmail and Calendar.

21.     Google provides several messaging services including Duo, Messages, Hangouts, Meet, and Chat. These services enable real-time text, voice, and/or video communications through browsers and mobile applications, and also allow users to send and receive text messages, videos, photos, locations, links, and contacts. Google may retain a user's messages if the user hasn't disabled that feature or deleted the messages, though other factors may also impact retention. Google does not retain Duo voice calls, though it may retain video or voicemail messages.

22.     Google offers a service called Google Voice through which a Google Account can be assigned a telephone number that can be used to make, record, and forward phone calls and send, receive, store, and forward SMS and MMS messages from a web browser, mobile phone, or landline. Google Voice also includes a voicemail service. Records are stored indefinitely, unless the user deletes them.

23.     Google offers a cloud-based photo and video storage service called Google Photos. Users can share or receive photos and videos with others. Google Photos can be trained to recognize individuals, places, and objects in photos and videos and automatically tag them for easy retrieval via a search bar. Users have the option to sync their mobile phone or device photos to Google Photos. Google preserves files stored in Google Photos indefinitely, unless the user deletes them.

24.     Google Drive is a cloud storage service automatically created for each Google Account. Users can store an unlimited number of documents created by Google productivity applications like Google Docs (Google's word processor), Google Sheets (Google's spreadsheet

program), Google Forms (Google's web form service), and Google Slides, (Google's presentation program). Users can also upload files to Google Drive, including photos, videos, PDFs, and text documents, until they hit the storage limit. Users can set up their personal computer or mobile phone to automatically back up files to their Google Drive Account. Each user gets 15 gigabytes of space for free on servers controlled by Google and may purchase more through a subscription plan called Google One. In addition, Google Drive allows users to share their stored files and documents with up to 100 people and grant those with access the ability to edit or comment. Google maintains a record of who made changes when to documents edited in Google productivity applications. Documents shared with a user are saved in their Google Drive in a folder called "Shared with me." Google preserves files stored in Google Drive indefinitely, unless the user deletes them.

25.     Google Keep is a cloud-based notetaking service that lets users take notes and share them with other Google users to view, edit, or comment. Google Keep notes are stored indefinitely, unless the user deletes them. Android device users can also use Google Drive to backup certain data from their device. Android backups on Google Drive may include mobile application data, device settings, file downloads, and SMS messages. If a user subscribes to Google's cloud storage service, Google One, they can opt to backup all the data from their device to Google Drive.

26.     Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using

14

Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps. Google stores Maps data indefinitely, unless the user deletes it.

27.     Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes it or opts to automatically delete their Location History and Web & App Activity after three or eighteen months. Accounts created after June 2020 auto-delete Location History after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

15

28.     A subsidiary of Google, Google Payment Corporation, provides Google Accounts an online payment service called Google Pay (previously Google Wallet), which stores credit cards, bank accounts, and gift cards for users and allows them to send or receive payments for both online and brick-and-mortar purchases, including any purchases of Google services. Users may delete some data associated with Google Pay transactions from their profile, but Google Payment Corporation retains some records for regulatory purposes.

29.     Google offers a free web browser service called Google Chrome which facilitates access to the Internet. Chrome retains a record of a user's browsing history and allows users to save favorite sites as bookmarks for easy access. If a user is logged into their Google Account on Chrome and has the appropriate settings enabled, their browsing history, bookmarks, and other browser settings may be saved to their Google Account in a record called My Activity. My Activity also collects and retains data about searches that users conduct within their own Google Account or using the Google Search service while logged into their Google Account, including voice queries made to the Google artificial intelligence-powered virtual assistant Google Assistant or commands made to Google Home products. Google also has the capacity to track the websites visited using its Google Chrome web browser service, applications used by Android users, ads clicked, and the use of Google applications by iPhone users. According to Google, this search, browsing, and application use history may be associated with a Google Account when the user is logged into their Google Account on the browser or device and certain global settings are enabled, such as Web & App Activity. Google Assistant and Google Home voice queries and commands may also be associated with the account if certain global settings are enabled, such as Voice & Audio Activity tracking. Google maintains these records indefinitely for accounts created before June 2020, unless the user deletes them or opts into automatic deletion of their

16

location history every three or eighteen months. Accounts created after June 2020 auto-delete Web & App Activity after eighteen months unless the user affirmatively changes the retention setting to indefinite retention or auto-deletion at three months.

30.     Google Accounts can buy electronic media, like books, movies, and music, and mobile applications from the Google Play Store. Google Play records can include records of whether a particular application has been or is currently installed on a device. Users cannot delete records of Google Play transactions without deleting their entire Google Account.

31.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

32.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

33.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-

17

location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation. Further, by determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Last, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via email).

34. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

35. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators. In addition, emails, instant messages, Internet activity, documents, and contact and calendar information can lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.

18

36.     Therefore, Google's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## CONCLUSION

37.     Based on the forgoing, I request that the Court issue the proposed search warrant.

38.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving the warrant on Google. Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

39.     I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may give targets an opportunity to flee/continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, notify confederates, or otherwise seriously jeopardize the investigation.

Respectfully submitted,

Ryan Potter
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on _____ January 10 _____, 2023
**via electronic means, specifically Facetime video.**

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

20

## ATTACHMENT A

### Property to be Searched

This warrant applies to information associated with ████████████████████

███████████████████████████████████████████

█████████████████████████████████

███████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

█████████████████████████████ (the "ACCOUNTS"), that are stored at

premises owned, maintained, controlled, or operated by Google LLC, a company headquartered

at 1600 Amphitheatre Parkway, Mountain View, California 94043.

**ATTACHMENT B**

**Particular Things to be Seized**

I.     **Information to be disclosed by Google**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from account creation to present, unless otherwise indicated:

a.     All business records and subscriber information, in any form kept, pertaining to the Account, including:

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3. Telephone numbers, including SMS recovery and alternate sign-in numbers;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

6. Length of service (including start date and creation IP) and types of service utilized;

7. Means and source of payment (including any credit card or bank account number); and

8. Change history.

2

b. All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c. Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d. The contents of all emails associated with the account from July 18, 2019 to present, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; true and accurate header information including the actual IP addresses of the sender and recipients of the emails; and all forwarding or fetching accounts relating to the accounts.

e. Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

f. Any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history

g. The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any

3

format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

      h.     All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

      i.     The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses.

      j.     The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

k. All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

l. All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

m. All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history.

n. All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

o.      All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history.

p.      The identity of any other user or account with which the TARGET ACCOUNTS were connected (to include those accounts linked by cookies).

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

6

**II.**      **Information to be seized by the government**

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 875(d), those violations occurring on or after, July 18, 2019, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(b) Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

(d) Evidence indicating the location at which the account was active and/or the location of the person(s) who created or used the user ID.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

7

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

### for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | ) Case No. **1:23-MJ-00018** |
| In the Matter of the Search of information associated with | ) |
| ████████████████, etc. that is stored at premises | ) |
| controlled by Google LLC | ) |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Northern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____January 23, 2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.     ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____Hon. Stephanie K. Bowman, U.S. Magistrate Judge_____ .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     **2:06 PM, Jan 10, 2023**          *Stephanie K. Bowman*
                                                                                 *Judge's signature*

City and state:     Cincinnati, Ohio          Stephanie K. Bowman, United States Magistrate Judge
                                                                    *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

### Property to be Searched

This warrant applies to information associated with ███████████████████

████████████████████████████████████████

███████████████████████████████

███████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

██████████████████████ (the "ACCOUNTS"), that are stored at

premises owned, maintained, controlled, or operated by Google LLC, a company headquartered

at 1600 Amphitheatre Parkway, Mountain View, California 94043.

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be disclosed by Google**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from account creation to present, unless otherwise indicated:

a.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1. Names (including subscriber names, user names, and screen names);

2. Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3. Telephone numbers, including SMS recovery and alternate sign-in numbers;

4. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5. Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers

6. Length of service (including start date and creation IP) and types of service utilized;

7. Means and source of payment (including any credit card or bank account number); and

8. Change history.

2

b.      All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.      Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs

d.      The contents of all emails associated with the account from July 18, 2019 to present, including stored or preserved copies of emails sent to and from the account, draft emails, and deleted emails; attachments; the source and destination addresses associated with each email; the size, length, and timestamp of each email; true and accurate header information including the actual IP addresses of the sender and recipients of the emails; and all forwarding or fetching accounts relating to the accounts.

e.      Any records pertaining to the user's contacts, including: address books; contact lists; social network links; groups, including Google Groups to which the user belongs or communicates with; user settings; and all associated logs and change history.

f.      Any records pertaining to the user's calendar(s), including: Google Calendar events; Google Tasks; reminders; appointments; invites; and goals; the sender and recipients of any event invitation, reminder, appointment, or task; user settings; and all associated logs and change history

g.      The contents of all text, audio, and video messages associated with the account, including Chat, Duo, Hangouts, Meet, and Messages (including SMS, MMS, and RCS), in any

3

format and however initially transmitted, including, but not limited to: stored, deleted, and draft messages, including attachments and links; the source and destination addresses associated with each communication, including IP addresses; the size, length, and timestamp of each communication; user settings; and all associated logs, including access logs and change history.

h.    All Google Voice records associated with the account, including: forwarding and other associated telephone numbers, connection records; call detail records; SMS and MMS messages, including draft and deleted messages; voicemails, including deleted voicemails; user settings; and all associated logs, including access logs, IP addresses, location data, timestamps, and change history.

i.    The contents of all media associated with the account in Google Photos, including: photos, GIFs, videos, animations, collages, icons, or other data uploaded, created, stored, or shared with the account, including drafts and deleted records; accounts with access to or which previously accessed each record; any location, device, or third-party application data associated with each record; and all associated logs of each record, including the creation and change history, access logs, and IP addresses.

j.    The contents of all records associated with the account in Google Drive (including Docs, Sheets, Forms, and Slides) and Google Keep, including: files, folders, media, notes and note titles, lists, applications, and other data uploaded, created, stored, or shared with the account including drafts and deleted records; third-party application data and backups; SMS data and device backups; the creation and change history of each record; accounts with access to or which previously accessed each record; any location, device, other Google service (such as Google Classroom or Google Group), or third-party application associated with each record; and all associated logs, including access logs and IP addresses, of each record.

4

k.      All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

l.      All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history.

m.      All payment and transaction data associated with the account, such as Google Pay and Google Wallet, including: records of purchases, money transfers, and all other transactions; address books; stored credit; gift and loyalty cards; associated payment cards, including any credit card or bank account number, PIN, associated bank, and other numbers; and all associated access and transaction logs, including IP address, time stamp, location data, and change history.

n.      All Internet search and browsing history, and application usage history, including Web & App Activity, Voice & Audio History, Google Assistant, and Google Home, including: search queries and clicks, including transcribed or recorded voice queries and Google Assistant responses; browsing history, including application usage; bookmarks; passwords; autofill information; alerts, subscriptions, and other automated searches, including associated notifications and creation dates; user settings; and all associated logs and change history.

5

o.      All activity relating to Google Play, including: downloaded, installed, purchased, used, and deleted applications, details of the associated device and Android ID for each application, medium, or file; payment transactions; user settings; and all associated logs, including IP addresses, timestamps, and change history.

p.      The identity of any other user or account with which the TARGET ACCOUNTS were connected (to include those accounts linked by cookies).

Google is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence, and instrumentalities of violations of 18 U.S.C. § 875(d), those violations occurring on or after, July 18, 2019, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(b) Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

(c) The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

(d) Evidence indicating the location at which the account was active and/or the location of the person(s) who created or used the user ID.

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

7

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
GOOGLE ACCOUNT(s):



THAT IS STORED AT THE PREMISES
CONTROLLED BY GOOGLE LLC

Case No. **1:23-MJ-00018**

**Filed Under Seal**

**APPLICATION FOR ORDER COMMANDING GOOGLE LLC NOT TO NOTIFY ANY PERSON OF THE EXISTENCE OF WARRANT**

The United States requests that the Court order Google LLC ("Google") not to notify any person (including the subscribers and customers of the account(s) listed in the warrant of the existence of the attached warrant for one year.

Google is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).  Pursuant to 18 U.S.C. § 2703, the United States obtained the attached warrant, which requires Google to disclose certain records and information to the United States.  This Court has authority under 18

U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

In this case, such an order would be appropriate because the attached warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b). Some of the evidence in this investigation is stored electronically. If alerted to the existence of the warrant, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Google not to disclose the existence or content of the attached warrant for one year, except that Google may disclose the attached warrant to an attorney for Google for the purpose of receiving legal advice.

The United States further requests that the Court order that this application and any resulting order be sealed until further order of the Court. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

_/s/ Timothy Landry_
Timothy Landry
Special Assistant United States Attorney
Mass. 669554

Executed on January 10, 2023                221 E. Fourth St., Ste. 400
Cincinnati, OH 45202

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT(s): ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ ████████████████ THAT IS STORED AT THE PREMISES CONTROLLED BY GOOGLE LLC | Case No. __1:23-MJ-00018__<br><br>**Filed Under Seal** |

**ORDER**

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Google LLC ("Google"), an electronic communication service provider and/or a remote computing service, not to notify any person (including the subscribers and customers of the account(s) listed in the warrant) of the existence of the attached warrant until one year.

The Court determines that there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation or unduly delay a trial, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper

with evidence, change patterns of behavior, intimidate potential witnesses, or endanger the life or physical safety of an individual. *See* 18 U.S.C. § 2705(b).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Google shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any other person, for a period of one year, except that Google may disclose the attached warrant to an attorney for Google for the purpose of receiving legal advice.

IT IS FURTHER ORDERED that the application and this Order are sealed until otherwise ordered by the Court.

**Jan 10, 2023**
_____
Date

*Stephanie K. Bowman*
_____
STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

AO 109 (Rev. 11/13) Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.: 23-MJ-18 | Date and time warrant executed: 11 - JAN - 23 | Copy of warrant and inventory left with: N/A |

Inventory made in the presence of:

Inventory of the property taken:

The contents of the following eMail accounts:

FILED
RICHARD W. NAGEL
CLERK OF COURT

2023 MAR 13 PM 12:22

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
WEST. DIV. CINCINNATI

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 10 - MAR - 23

_____
Executing officer's signature

SA Ryan Potter
_____
Printed name and title

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** | **MAGISTRATE CASE NO. 1:23-MJ-018** |
| **INFORMATION ASSOCIATED WITH** ███████████████████ **THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, LLC** (filed on 1/10/2023) | **MAGISTRATE JUDGE BOWMAN** **MOTION REQUESTING CASE TO REMAIN SEALED** |

Now comes the United States Attorney and moves this Court, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, and the Court's inherent power to control papers filed with the Court, for an order requiring that the entire case, 1:23-MJ-018, remain sealed until July 31, 2023 or until such time as an Indictment or Information is filed or until directed by this Court.

In support of this Motion, the United States Attorney charges:

1.      That an application for a Search Warrant was filed in this case on January 10, 2023.  The United States Attorney asks that the entire case, 1:23-MJ-018, remain sealed until July 31, 2023 or until such time as an Indictment or Information is filed or until directed by this Court.  *In re Search Warrant for 2934 Anderson Morris Road Niles, Ohio 44406*, 48 F.Supp.2d 1082, 1084 (N.D. Ohio 1999) (holding that "the sensitive nature of the information contained in the affidavit, the compelling governmental interest in protecting the ongoing investigation, and the privacy interests of those named in the affidavit, all weigh in favor of maintaining the affidavit under seal.")  Placing all documents in case 1:23-MJ-018 under seal will alleviate the need to file multiple duplicate motions in the same Magistrate Case.

2.      That there is no Indictment or Information pending before any United States District Court which necessitates the disclosure of the documents in case 1:23-MJ-018 at this time.

3.     Pursuant to Rule 12 of the Federal Rules of Criminal Procedure the proper time for moving to suppress evidence obtained pursuant to the search warrant is subsequent to the filing of an Indictment or Information and arraignment thereon. Therefore, no prejudice would be caused to any defendant or potential defendant by the granting of this motion.

4.     That the disclosure of certain information and statements contained in said documents would greatly hamper an ongoing criminal investigation.

WHEREFORE, the United States of America respectfully requests that the entire case, 1:23-MJ-018, remain sealed and kept from public inspection until further order of the Court or until July 31, 2023, whichever comes first.

Respectfully submitted,

KENNETH L. PARKER
UNITED STATES ATTORNEY


*s/Timothy Landry*_____
TIMOTHY LANDRY
Special Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-2047
E-mail: Timothy.Landry@usdoj.gov

Upon the Motion of the United States Attorney and for good cause shown, it is

**ORDERED** that the entire case, 1:23-MJ-018, remain sealed and the Clerk is instructed not to unseal the case until further order of this Court, or until July 31, 2023, whichever comes first.


_____
DATE

_____
HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | |
|---|---|
| **IN THE MATTER OF THE SEARCH OF:** | **MAGISTRATE CASE NO. 1:23-MJ-018** |
| **INFORMATION ASSOCIATED WITH** ▮▮▮▮▮▮▮▮▮▮ **THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE, LLC** **(filed on 1/10/2023)** | **MAGISTRATE JUDGE BOWMAN** **MOTION REQUESTING CASE TO REMAIN SEALED** |

Now comes the United States Attorney and moves this Court, pursuant to Rule 16(d)(1) of the Federal Rules of Criminal Procedure, and the Court's inherent power to control papers filed with the Court, for an order requiring that the entire case, 1:23-MJ-018, remain sealed until July 31, 2023 or until such time as an Indictment or Information is filed or until directed by this Court.

In support of this Motion, the United States Attorney charges:

1.    That an application for a Search Warrant was filed in this case on January 10, 2023.  The United States Attorney asks that the entire case, 1:23-MJ-018, remain sealed until July 31, 2023 or until such time as an Indictment or Information is filed or until directed by this Court.  *In re Search Warrant for 2934 Anderson Morris Road Niles, Ohio 44406*, 48 F.Supp.2d 1082, 1084 (N.D. Ohio 1999) (holding that "the sensitive nature of the information contained in the affidavit, the compelling governmental interest in protecting the ongoing investigation, and the privacy interests of those named in the affidavit, all weigh in favor of maintaining the affidavit under seal.")  Placing all documents in case 1:23-MJ-018 under seal will alleviate the need to file multiple duplicate motions in the same Magistrate Case.

2.    That there is no Indictment or Information pending before any United States District Court which necessitates the disclosure of the documents in case 1:23-MJ-018 at this time.

3.      Pursuant to Rule 12 of the Federal Rules of Criminal Procedure the proper time for moving to suppress evidence obtained pursuant to the search warrant is subsequent to the filing of an Indictment or Information and arraignment thereon.  Therefore, no prejudice would be caused to any defendant or potential defendant by the granting of this motion.

4.      That the disclosure of certain information and statements contained in said documents would greatly hamper an ongoing criminal investigation.

WHEREFORE, the United States of America respectfully requests that the entire case, 1:23-MJ-018, remain sealed and kept from public inspection until further order of the Court or until July 31, 2023, whichever comes first.

Respectfully submitted,

KENNETH L. PARKER
UNITED STATES ATTORNEY


*s/Timothy Landry*
TIMOTHY LANDRY
Special Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
Office: (513) 684-3711
Fax: (513) 684-2047
E-mail: Timothy.Landry@usdoj.gov


Upon the Motion of the United States Attorney and for good cause shown, it is

**ORDERED** that the entire case, 1:23-MJ-018, remain sealed and the Clerk is instructed not to unseal the case until further order of this Court, or until July 31, 2023, whichever comes first.

**Mar 13, 2023**
DATE

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE